UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEREL M. POH, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>MASSACHUSETTS CORRECTION )<br>OFFICERS FEDERATED UNION AND )<br>PAUL BOUDREAU, )<br>    Defendants. ) | DOCKET NO.  03 CV 11987 RWZ |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT MCOFU'S MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

Defendant Massachusetts Correction Officers Federated Union ("MCOFU") seeks summary judgment as to each of the counts of the Complaint that relate to it: Count I (ADA discrimination); Count II (ADA retaliation); Count III (ADA intimidation and interference); Count IV (M.G.L. c. 151B handicap discrimination); Count VI (M.G.L. c. 151B handicap discrimination); Count VII (M.G.L. c. 151B intimidation and interference); Count VIII (violation of Massachusetts Civil Rights Act); Count IX (breach of contract); Count XI (intentional infliction of emotional distress); and Count XII (civil conspiracy).

While MCOFU's motion purports to seek dismissal of the retaliation claims under the ADA and M.G.L. c. 151B (Counts II, III and VII), it addresses no arguments in support of such dismissal other than its position that Plaintiff does not meet the definition of "disability" under the ADA or the definition of "handicapped" under M.G.L. c. 151B.  While Plaintiff submits that he meets those definitions, Plaintiff argues below that regardless of whether he meets the definitions, his retaliation claims are viable.

Defendant Paul Boudreau has not moved for summary judgment as to the Counts of the Complaint directed to him, namely Counts II, III, V, VI, VII, VIII, X, XI and XII.

1

## II.     STATEMENT OF FACTS

Plaintiff respectfully refers the Court to Plaintiff's Statement of Material Facts of Record as to Which There Exists a Genuine Issue to be Tried

## III.     ARGUMENT

### A.     The Standard of Review

Summary judgment's role is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). The Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." The burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

### M.G.L. c. 151B Provides Greater Protection Than the ADA

The Supreme Judicial Court has frequently recognized that Chapter 151B provides greater protection than its federal counterpart. See, e.g., Labonte v. Hutchins & Wheeler, 424 Mass. 813, 816 n.5 (1977) (Massachusetts courts have no obligation to follow the Federal case law in the area of Chapter 151B claims); Melnychenko v. 84 Lumber Co., 424 Mass. 285, 288 (1997) ("We arrive at our own conclusion in construing our own statute [Chapter 151B]."). Chapter 151B, by its terms, directs courts that it "shall be construed liberally for the accomplishment of [its] purposes." M.G.L. c. 151B, s. 9. Finally, Chapter 151B, s. 2 and 3 authorize the MCAD to promulgate rules and regulations to carry out the provisions of Chapter 151B and such rules and regulations are entitled to deference by the courts. Bynes v. School Committee of Boston, 411 Mass. 264, 269 (1991) (The MCAD's interpretation of its governing statute is entitled to substantial deference.).

**B.     There Is A Genuine Issue For Trial Concerning Whether Plaintiff Had a Disability Within the Meaning of the ADA**

There is a clear statutory mandate under the ADA to determine the existence of disabilities on a case-by-case basis and that the determination of whether someone has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual.  The determination of whether an individual is substantially limited in a major life activity must be made on a case-by-case basis. Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566 (1999); Sutton v. United Air Line, Inc. 527 U.S. 471, 483 (1999).  Moreover, an extended medical leave can be a reasonable accommodation under the ADA and an extended medical leave does not necessarily mean that the employee is unable to perform the essential functions of his job.  Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 647 (1st Cir. 2000); Russell v. Cooley Dickinson Hosp., 437 Mass. 443, 455-456 (2002).

The ADA defines disability as (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment.  42 U.S.C. §12102(2)(A)-(C); 29 C.F.R. 1630.2(g). The definition of handicap under M.G.L. c. 151B is similar.  M.G.L. c. 151B, §1(17).

MCOFU does not dispute that Plaintiff had an impairment.  Instead, MCOFU challenges whether Plaintiff's impairment substantially limited one or more of his major life activities.

**Major Life Activities**

Plaintiff submits that his impairment substantially limited the major life activities of performing manual tasks, lifting, sleeping and working.

The EEOC has defined the term "major life activities" as follows:

> Major life activities "are those basic activities that the average person in the general population can perform with little or no difficulty."  29 C.F.R. Pt. 1630.2(i), App. "Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. 1630.2(i).

3

M.G.L. c. 151B, §1(20) lists the same examples of major life activities.  The <u>M.C.A.D. Guidelines: Employment Discrimination on the Basis of Handicap - Chapter 151B</u> ("MCAD Guidelines") provide other examples of major life activities, including include sitting, standing, and lifting.  <u>MCAD Guidelines</u>, §II(A)(5).[1]

Major life activities are those activities that are of "central importance to daily life." <u>Carroll v. Xerox Corp.</u>, 294 F.3d 231, 238 (1st Cir. 2002) (quoting <u>Toyota Motor Mfg. v. Williams</u>, 534 U.S. 184, 197 (2002)).  These include, <u>inter alia</u>, basic actions such as seeing, hearing, speaking, breathing, performing manual tasks, lifting, and reaching.  <u>Sullivan v. Neiman Marcus Group, Inc.</u>, 358 F.3d 110, 115 (1st Cir. 2004); 29 C.F.R. Pt. 1630, App. (2004).  The courts have recognized various major life activities," including the performance of manual tasks, <u>Toyota Motor Mfg.</u>, 534 U.S. at 198; lifting, <u>Gillen v. Fallon Ambulance Serv., Inc.</u>, 283 F.3d 11, 21 (1st Cir. 2002); and sleeping, <u>Calero-Cerezo v. DOJ</u>, 355 F.3d 6, 21 (1st Cir. 2004) (citing <u>Criado v. IBM Corp.</u>, 145 F.3d 437, 442-43 (1st Cir. 1998)). In addition, the courts have assumed without deciding that working may constitute a major life activity. See, e.g., <u>Whitlock v. Mac-Gray, Inc.</u>, 345 F.3d 44, 46 n. 1 (1st Cir. 2003); <u>Carroll v. Xerox Corp.</u>, 294 F.3d 231, 239 n. 7 (1st Cir. 2002); <u>Gelabert-Ladenheim v. American Airlines, Inc.</u>, 252 F.3d 54, 58 (1st Cir. 2001).

**Substantially Limits**

The definition of "substantially limits" is similar under federal and state law.  It means:  (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life

---

[1] Relevant portions of the MCAD Guidelines attached to this memorandum as Exhibit A.

activity.  Whether an impairment substantially limits a major life activity depends on three factors: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or expected long-term impact of the impairment.  29 C.F.R. 1630.2(j); MCAD Guidelines, §II(A)(6).

In this case, there is substantial evidence that Plaintiff's impairment substantially limited his ability to perform the major life activities of performing manual tasks, lifting and sleeping.  He suffered a chronic neck and shoulder injury, resulting in his being out of work for six and a half years.  Plaintiff received worker's compensation benefits for this work injury.  He received total disability benefits for approximately one year and then partial disability benefits thereafter until approximately June 2001.

As a result of the work injury, Plaintiff had limited use of his left arm and shoulder. While his symptoms gradually improved over these ten years, Plaintiff still has pain and symptoms from the injury.  In the beginning, Plaintiff was unable to use my left arm and shoulder at all.  Over time, his function improved. For years, Plaintiff had significant restrictions and limitations with regard to his left arm, neck and shoulder.  Plaintiff could not do anything strenuous that involved those parts of his body.  He had limitations with regard to lifting, pushing and pulling.

Plaintiff has always been physically active with regard to sporting activities and keeping in good physical condition.  Before the injury, he would work out at the gym on a frequent basis, four times a week on average, which included the use of weight training equipment.  After the injury, he was unable to do so for a long period of time. Plaintiff had trouble even lifting his young son due to his injury.  Plaintiff did not go back to weight training until 2002, almost seven years later.

Due to the pain from the work injury, Plaintiff had a great deal of trouble sleeping at night. This has continued to the present, though not as severe.

Plaintiff also claims that his impairment substantially limited the major life activity of working. In order to demonstrate a substantial limitation where work is at issue, a "plaintiff must show that [he] is significantly restricted in [his] ability to perform 'a class of jobs' [or] . . . 'a broad range of jobs in various classes.'" Gelabert-Ladenheim v. Am. Airlines, Inc., 252 F.3d 54, 60 (1st Cir. 2001). Plaintiff was certainly disabled from his usual job for a very long period of time. In addition, his injury would likely render him unable to perform any job that involved heavy lifting or any strenuous use of his arm or shoulder. Prior to his employment at the DOC, Plaintiff had work experience as a painter, book binder, garbage truck worker, bartender and sheet metal HVAC worker. It appears likely that he would be unable to perform the essential functions of any of these jobs as a result of his injury. Plaintiff submits that his neck and shoulder injury substantially limited the major life activity of working.

**C.     There Is A Genuine Issue For Trial Concerning Whether Plaintiff Had a Handicap Within the Meaning of M.G.L. c. 151B**

Chapter 151B prohibits employment discrimination against "qualified handicapped persons." M.G.L. c. 151B, §4(16). While Plaintiff submits that the severity of his injury otherwise satisfies the definition of qualified handicapped, he is **deemed** a qualified handicapped person pursuant to M.G.L. c. 152, §75B(l). That statute provides:

> [a]ny employee who has sustained a work-related injury and is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of such job with reasonable accommodations, shall be deemed to be a qualified handicapped person under the provisions of chapter one hundred and fifty-one B.

In Everett Indus., Inc. v. MCAD, 49 Mass. App. Ct. 1116, 2000 WL 1476321 (2000)(unpublished opinion), further review denied, 432 Mass. 1109 (2000), the Massachusetts Appeals Court held that an employee injured at work, who would have been able to perform the essential functions of her job with reasonable accommodation for her injury, is **presumed** to be a qualified handicapped person pursuant to M.G.L. c. 152, s. 75B(1). See Gilman v. C & S

6

Wholesale Grocers, Inc., 170 F. Supp.2d 77, 84-85 (D.Mass. 2001); Piderit v. Siegal & Sons, 55 Mass. App. Ct. 1, 3 n. 4 (2002). See also MCAD Guidelines, Section II(A)(6) at 4, n.3 (M.G.L. c. 152, §75B(l) as an exception to the proposition that isolated medical problems or illnesses of short duration are usually not handicaps).

Complainant had sustained a work-related injury to his neck and shoulder and was capable of performing the essential functions of his job with or without reasonable accommodation thereafter. Complainant is "qualified" handicapped because he had been performing his job satisfactorily for years. Accordingly, he is deemed a qualified handicapped person pursuant to M.G.L. c. 152, §75B(l).

Plaintiff further submits that, regardless of the "deeming" provision of M.G.L. c. 152, §75B(l), he meets the statutory definition of handicapped.

**D.    There Is A Genuine Issue For Trial Concerning Whether Plaintiff Was Retaliated Against Within the Meaning of the ADA and M.G.L. c. 151B**

**Summary Judgment Disfavored in Retaliation Claims**

Federal courts have recognized the difficulty of disposing of issues of discriminatory or retaliatory intent at the summary judgment stage, particularly after a plaintiff establishes a prima facie case. Hossaini v. Western Missouri Medical Center, 97 F.3d 1085 (8th Cir. 1996) (grant of summary judgment on retaliation claim inappropriate because case is based largely on circumstantial evidence and the relative merit of each party's case depends significantly on credibility); Davis v. Fleming Companies, Inc., 55 F.3d 1369 (8th Cir. 1995). "Summary judgments should be sparingly used and then only in those rare instances where there is no dispute of fact and where there exists only one conclusion. All the evidence must point one way and be susceptible of no reasonable inferences sustaining the position of the nonmoving party." Johnson v. Minnesota Historical Soc'y, 931 F.2d 1239, 1244 (8th Cir. 1991); Gill v. Reorganized Sch. Dist. R-6, Festus, Missouri, 32 F.3d 376, 378 (8th Cir. 1994)(reviewing summary judgment "with caution in

employment discrimination cases . . . because intent is inevitably the central issue"). "There will seldom be `eyewitness' testimony as to the employer's mental processes." U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983); See Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003) (summary judgment on retaliation claim reversed where a reasonable juror could infer that Defendant's claim of insubordination masked retaliatory motives).

**The Statutory Provisions**

Both the ADA and M.G.L. c. 151B contains two anti-retaliation provisions. The federal and state statutory provisions are similar. 42 U.S.C. § 12203(a) and (b); M.G.L. c. 151B, § 4(4) and 4(4A). 42 U.S.C. § 12203 provides:

(a) No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

To state a claim for retaliation, Plaintiff must show that (i) he engaged in protected conduct, (ii) he was thereafter subjected to an adverse action, and (iii) a causal connection existed between the protected conduct and the adverse action. Benoit v. Tech. Mfg. Corp., 331 F.3d 166 (1st Cir. 2003); White v. New Hampshire Department, Corrections, 221 F.3d 254, 262 (1st Cir. 2000); Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998); Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994). A plaintiff engages in protected activity by filing internal and EEOC complaints. See Hernandez-Torres, 158 F.3d at 47. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991); Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 33 (1st Cir. 1990).

An ADA plaintiff need not succeed on a disability claim to succeed on a claim for retaliation. Wright v. CompUSA, Inc., 352 F.3d 472, 477-78 (1st Cir. 2003); Soileau v. Guilford of

8

Maine, Inc., 105 F.3d 12,16 (1st Cir. 1997) (citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991)).  It is enough that the plaintiff had a reasonable, good-faith belief that a violation occurred; that he acted on it; that the defendant knew of the plaintiff's conduct; and that the defendant lashed out in consequence of it. Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 33 (1st Cir. 1990).

Similarly, retaliation is a separate and independent cause of action under Chapter 151B. Abramian v. President & Fellows of Harvard, 432 Mass. 107, 121 (2000).  To succeed on a claim of retaliation, "the plaintiff must prove that he reasonably and in good faith believed that the [Defendant] was engaged in wrongful discrimination, that he acted reasonably in response to his belief, and that the [Defendant's] desire to retaliate against him was a determinative factor in its decision to [discriminate against him]." Abramian v. President & Fellows of Harvard, 432 Mass. 107, 121 (2000);  Tate v. Department of Mental Health, 419 Mass. 356, 364 (1995). A jury may find retaliation "even if there was no discrimination." Abramian at 121-22.

In the present case, Plaintiff filed a charge of discrimination with the MCAD/EEOC on 1/8/01 alleging that MCOFU, by recommending the disqualification of his candidacy due to his industrial leave status, had discriminated against him based on the basis on disability or handicap. In addition, on 1/8/01, Plaintiff (and others) brought an internal union judicial charge against MCOFU's Special Election Committee and Executive Board raising that same issue. In its motion, MCOFU does not dispute that Plaintiff reasonably and in good faith believed that MCOFU was engaged in wrongful discrimination or that Plaintiff acted reasonably in response to his belief by filing the MCAD/EEOC charge or the internal union judicial charge.  Nor does MCOFU dispute in its motion that it was aware of Plaintiff's protected activity or that its desire to retaliate against Plaintiff was a determinative factor in the bringing of judicial charges against Plaintiff or its decision to expel Plaintiff from union membership.

9

The **sole** ground raised by MCOFU in its motion with regard to the retaliation claims was that Plaintiff does not meet the definition of "disability" under the ADA or the definition of "handicapped" under M.G.L. c. 151B. Under the authority stated above, Plaintiff does not have to succeed on the disability or handicap claims to prevail on his retaliation claims. Accordingly, MCOFU's motion regarding these claims should be denied.

E.      There Is A Genuine Issue For Trial Concerning Whether MCOFU Violated the Massachusetts Civil Rights Act

To establish a claim under the Massachusetts Civil Rights Act ("MCRA"), Plaintiff must prove that (1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by `threats, intimidation or coercion.'" Swanset Dev. Corp. v. Taunton, 423 Mass. 390, 395 (1996); Reproductive Rights Network v. President of University of Massachusetts, 45 Mass. App. Ct. 495, 505 (1998). Although the Legislature in enacting the MCRA did not intend to create "a vast constitutional tort" Bally v. Northeastern Univ., 403 Mass. 713, 718 (1989), the MCRA, "like other civil rights statutes, is remedial [in nature and] [a]s such, it is entitled to liberal construction of its terms." Batchelder v. Allied Stores Corp., 393 Mass. 819, 822 (1985).

The Supreme Judicial Court has accepted the following definition of the term "threats, intimidation, or coercion." A "`[t]hreat' . . . involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. `Intimidation' involves putting in fear for the purpose of compelling or deterring conduct. . . . [Coercion involves] `the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.'" Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 (1994).

Relief under the Act may be granted where the "threat, intimidation or coercion" involves the loss of a contract right. <u>Willitts v. Roman Catholic Archbishop of Boston</u>, 411 Mass. 202, 210 (1991).  See <u>Redgrave v. Boston Symphony Orchestra, Inc.</u>, 399 Mass. 93, 95 (1987) (cancellation of theatrical performance due to disagreement with the plaintiff's political views).

In the case at bar, Plaintiff claims that his exercise or enjoyment of rights secured by the constitution have been interfered with, or attempted to be interfered with, by MCOFU.  Plaintiff had a right of free speech with regard to campaigning to decertify MCOFU in 1994.  This right is secured by Article 16 of the Massachusetts Declaration of Rights as well as the First Amendment to the United States Constitution.  Plaintiff also had a right to bring suit against MCOFU for defamation of character. This right is secured by Article 11 of the Massachusetts Declaration of Rights which provides:

> Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character.

Plaintiff claims the loss of a contract right by virtue of his expulsion from MCOFU.  By virtue of his membership, Plaintiff had a contract with MCOFU, the terms and conditions of which were expressed in MCOFU's constitution and by-laws.  See Section F below.  Plaintiff's expulsion from MCOFU based on his exercise of constitutional rights resulted in the loss of a contract right. As such, Plaintiff has a triable claim of violation of the MCRA.

MCOFU, citing <u>Reproductive Rights Network v. President of University of Massachusetts</u>, 45 Mass. App. Ct. 495 (1998), argues that Plaintiff's expulsion was an "administrative action" that does not rise to the level of "threats, intimidation or coercion" required for a finding of violation of the MCRA.  However, MCOFU fails to cite the "administrative action" limitation completely. An administrative action, **unrelated to a scheme of harassment**, "does not rise to the level of threats, intimidation, or coercion." <u>Reproductive Rights Network</u>, 45 Mass. App. Ct. at 509 (emphasis

11

added); Murphy v. Duxbury, 40 Mass. App. Ct. 513, 518 (1996).  This "administrative action" limitation has been typically applied to property developers' MCRA claims against municipalities. Reproductive Rights Network, 45 Mass. App. Ct. at 509 (and cases cited).  The Reproductive Rights Network court found those cases distinguishable from the case before it, in which free speech rights, and not property rights, were invoked. 45 Mass. App. Ct. at 509. Likewise, the present case, involving free speech right and rights of redress to the court, is distinguishable on the same grounds.  Moreover, the loss of a contract right, as in the present case, is sufficient to meet the "threat, intimidation or coercion" requirement.  Willitts, supra; Redgrave, supra.

Even if Plaintiff's expulsion from MCOFU could be labeled an administrative action, the evidence shows that the action was "related to a scheme of harassment." Reproductive Rights Network, supra.  In order to establish a "scheme of harassment" there must be some evidence of animus against the plaintiff and an attempt to thwart [the plaintiff] through adverse administrative action unrelated to the board's legitimate concerns. Freeman v. Planning Bd. of West Boylston, 419 Mass. 548, 564 n. 17. (1995); Murphy v. Duxbury, 40 Mass. App. Ct. 513, 518 (1996).

Plaintiff has produced significant evidence of animus by MCOFU against him.  MCOFU interfered with Plaintiff's candidacy for the executive board initially through the recommendation by the Special Election Committee that he be disqualified from candidacy based on his industrial leave status.  Shortly after receiving notice that his name would be placed on the ballot, Plaintiff was informed by MCOFU's president that his industrial accident leave status was going to be placed on the election ballot.  MCOFU ultimately did not place Plaintiff's industrial accident leave status on the election ballot.  However, shortly afterwards, Plaintiff's campaign signs throughout the Commonwealth were vandalized.  The signs were spray painted with "I.A." and I.A. Slate."

On or about 4/24/01, MCOFU Executive Board member Paul Boudreau brought union judicial charges against Plaintiff (and Ray Perry) alleging that Plaintiff had violated MCOFU's

12

constitution and by-laws by campaigning to decertify MCOFU in 1994 (seven years earlier). Boudreau was an executive board member before and after the 2001 election. Boudreau testified at his deposition that he brought the judicial charges against Plaintiff at the instigation and request of Jack Flanagan, Dave Miranda and Gary Murphy. Miranda was an executive board member before and after the 2001 election. Flanagan was an incumbent candidate in the 2001 executive board elections. Boudreau, Miranda and Flanagan were also named "accuseds" in the judicial charges brought by Plaintiff in January 2001 (concerning the issue of disqualification from candidacy based on industrial leave status). Murphy was a former Executive Board member.

While Boudreau denied it at his deposition, Boudreau admitted to fellow Correction Officer Michael Langlois that the reason he brought such charges against Plaintiff (and Ray Perry) was because they had filed discrimination complaints against MCOFU with the MCAD, because they had filed judicial charges against Boudreau and the Special Election Committee and because Plaintiff had filed the defamation suit against MCOFU.

Plaintiff alleges further alleges that MCOFU failed to provide him with notice of the hearing on these judicial charges, depriving him of the right to respond to these charges, an opportunity to be heard on the charges and the right to present evidence and witnesses on his behalf. MCOFU expelled Plaintiff from membership in MCOFU on 6/12/01 in violation of these procedural rights and despite the fact that the conduct of which Plaintiff was accused was not even a basis for judicial charges under MCOFU's constitution and by-laws.

Plaintiff submits that there is more than sufficient evidence of animus by MCOFU against him. Accordingly, the "administrative action" limitation does not apply.

**F.     There Is A Genuine Issue For Trial Concerning Whether MCOFU Breached Its Contract with Plaintiff**

In its motion, MCOFU completely misconstrues Plaintiff's breach of contract claim. Plaintiff does not allege that there was a breach of his employment contract with the Department of Correction. Plaintiff alleges that MCOFU breached **its** contract with Plaintiff. Plaintiff alleges that in becoming a member of MCOFU, he entered into a contract with MCOFU, the terms and conditions of which are expressed in MCOFU's constitution and by-laws. Complaint, para. 123. Plaintiff further alleges that MCOFU materially breached that contract. Complaint, para. 124.

The Supreme Judicial Court has defined the contractual relationship that exists between a union and a union member. Sullivan v. Barrows, 303 Mass. 197, 201 (1939). "The plaintiff, in becoming a member of the local, had entered into a contract. The terms and conditions of the contract were expressed by the constitution and by-laws, which defined not only the benefits and privileges secured but also the duties and obligations assumed." Id. at 201; Switzer v. Labor Relations Commission, 36 Mass. App. Ct. 565, 568 (1994) (Whether the actions of a union towards its member constitute a violation of the constitution and by-laws is a matter for the courts, not the Labor Relations Commission.).

Plaintiff contends that MCOFU breached its contract with him in a number of ways. The actions that Plaintiff contends constitute breaches of contract include the efforts to disqualify him from running for the executive board in the 2001 elections; threatening to place his industrial accident leave status on the 2001 ballot; failing to serve the judicial charges upon him; failure to provide him with notice of the hearing on those charges, the opportunity to respond to the charges, to present evidence in his defense and to cross-examine witnesses; having biased parties decide those charges; and expelling him from membership in MCOFU on grounds not supported by the constitution and by-laws. Plaintiff contends that the following provisions of the MCOFU

constitution and by-laws were breached: Article XI, Sections 1, 2, 5, 7, and 8; and By-Laws Articles I, II and IV.

Plaintiff submits that a triable issue of breach of contract has been presented. Accordingly, Defendant's motion should be denied as to Count IX.

### G.    There Is A Genuine Issue For Trial Concerning Whether Defendant MCOFU Intentionally Inflicted Emotional Distress Upon Plaintiff

Plaintiff submits that the evidence supports a triable claim of intentional infliction of emotional distress against MCOFU. MCOFU, in turn, argues that the evidence is not sufficient to prove either the required outrageous conduct or the necessary extreme emotional distress.

Plaintiff will not burden the Court with further repetition of the events surrounding Plaintiff's running for the executive board in early 2001 and the events surrounding his ultimate expulsion from MCOFU by August 2001. Plaintiff submits that these actions speak for themselves and may be considered so outrageous in character and so extreme in degree, so as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. Agis v. Howard Johnson Company, 371 Mass 140, 144-45 (1976).

Moreover, Plaintiff has produced evidence that his emotional distress is severe. Plaintiff testified that MCOFU was a union that he helped organize and establish. Plaintiff, to this day, feels anger and humiliation from his expulsion. He can't take his children to MCOFU's Christmas parties, attend union meetings, vote for officers, vote on matters that affect him or the union membership, run for union office or "be a voice at all." Plaintiff feels "like a pariah" in his own workforce. Plaintiff testified that his expulsion from union membership makes him feel viewed as an outcast among his fellow officers and he worries that his fellow officers can no longer trust him. Plaintiff feels that his reputation has been tarnished.

Plaintiff is upset by actions of MCOFU that interfered with his attempt to run for union office in 2001 and with the manner and grounds for his expulsion from MCOFU.  Plaintiff is particularly distressed over the stated grounds for his expulsion since he wrote MCOFU's constitution and by-laws and the act of "campaigning to decertify MCOFU" was intentionally left out by MCOFU's founders as grounds for expulsion.

Plaintiff submits that the alleged conduct and the alleged emotional distress are sufficient to meet the legal threshold and that the matter should be for a jury to decide.

**H.     There Is A Genuine Issue For Trial Concerning Whether Defendant MCOFU Is Guilty of a Civil Conspiracy Against Plaintiff**

Plaintiff submits that the evidence supports a triable claim of civil conspiracy against MCOFU. Massachusetts law recognizes two kinds of civil conspiracy.  Kurker v. Hill, 44 Mass. App. Ct. 184, 188 (1998).  The first kind involves coercion.  Plaintiff must establish that the Defendants, acting in unison, had a power of coercion over the Plaintiff that they would not have had if they acted independently.  Neustadt v. Employers' Liability Assurance, Corp, 303 Mass 321, 325 (1939).  The second kind involves concerted action.  Under this theory, a person may be liable in tort if he knows of the conduct another person constituted a breach of duty and gives substantial assistance or encouragement to the other to engage in tortious conduct.  Key to this cause of action is a defendant's substantial assistance with the knowledge that such assistance is contributing to a common tortious plan.  Kurker v. Hill, 44 Mass. App. Ct. at 189.

Plaintiff's complaint alleges two torts, tortious interference with advantageous contractual relations (Count X) and intentional infliction of emotional distress (Count XI).  Moreover, Plaintiff claims that his expulsion from MCOFU was unlawful and not in conformance with Plaintiff's contractual rights.  Plaintiff also alleges monetary loss as well as emotional distress from his expulsion.

The facts presented demonstrate a series of collusive events over the course of approximately eight months involving members of MCOFU's Special Election Committee, MCOFU's Judicial Panel and past and current members of MCOFU's executive board. The result of this collusion was substantial interference with Plaintiff's ability to run for and obtain the executive board position and later Plaintiff's expulsion from MCOFU without the required procedural safeguards and substantively without support in MCOFU's constitution and by-laws. Plaintiff submits that a triable claim of civil conspiracy against MCOFU has been demonstrated under either theory.

## IV.   CONCLUSION

WHEREFORE, Plaintiff respectfully requests this Honorable Court to deny Defendant MCOFU's Motion for Summary Judgment in all respects

JEREL M. POH,

By his attorney,

/ s / Richard A. Mulhearn
Richard A. Mulhearn (BBO #: 359680)
Law Office of Richard A. Mulhearn, P.C.
41 Elm Street
Worcester, MA 01609
(508) 753-9999

Dated: December 6, 2005.